# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**RODNEY CARTER,**

        **Plaintiff,**

**v.**                                       **Case No.: 3:19-cv-00077**

**UNITED STATES,**

        **Defendant.**

### MEMORANDUM OPINION AND ORDER

Pending are Defendant's Motion to Strike Plaintiff's Demand for A Jury Trial, (ECF No. 13), and Defendant's Motion to Dismiss, (ECF No. 15). Plaintiff has filed a response to the Motion to Dismiss, (ECF No. 18), and Defendant has filed a reply memorandum. (ECF No. 19). For the following reasons, the Court **ORDERS** that:

1. Defendant's Motion to Strike is **GRANTED**. (ECF No. 13). Title 28 U.S.C. § 2402 clearly indicates that tort claims against the United States for money damages "shall be tried by the court without a jury." *Id.*; *also Lehman v. Nakshian,* 453 U.S. 156, 161 (1981) (holding that "in tort actions against the United States … Congress has similarly provided that trials shall be to the court without a jury.") (citing 28 U.S.C. § 2402).

2. With respect to the Motion to Dismiss, the United States argues that Plaintiff's complaint alleges medical malpractice, but Plaintiff has failed to file the requisite pre-suit paperwork; therefore, the complaint must be dismissed. (ECF Nos. 15, 16). Specifically, the United States contends that the alleged wrongdoing in this case occurred in the State of West Virginia and, therefore, the case is governed by West

Virginia's Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq*. Under § 55-7B-6 of the MPLA, a plaintiff is required to submit to the accused medical provider a Notice of Claim and a Screening Certificate of Merit at least thirty days ***before*** the plaintiff can file a lawsuit. According to the United States, Plaintiff submitted a federal Form 95 in February 2018, but did not provide the Notice of Claim or Screening Certificate required by West Virginia law.

The United States is correct that, even though this is a federal lawsuit, Plaintiff must follow the mandates of W. Va. Code § 55-7B-6 before filing a medical negligence complaint against the United States for care rendered at the Veterans Administration Medical Center. *See Unus v. Kane,* 565 F.3d 103, 117 (4th Cir. 2009) ("The FTCA does not itself provide for a substantive cause of action. Rather, in assessing FTCA claims, we apply the substantive law of the state where the alleged tort took place...."). W. Va. Code § 55-7B-6 sets out all of the prerequisites for filing a medical negligence claim as follows:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

> (b) At least 30 days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. For the purposes of this section, where the medical professional liability claim against a health care facility is premised upon the act or failure to act of agents, servants, employees, or officers of the health care facility, such agents, servants, employees, or officers shall be identified by area of professional practice or role in the health care at issue. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider who:

> (1) Is qualified as an expert under the West Virginia rules of evidence;

(2) Meets the requirements of § 55-7B-7(a)(5) and § 55-7B-7(a)(6) of this code; and

(3) Devoted, at the time of medical injury, 60 percent of his or her professional time annually to the active clinical practice in his or her medical field or specialty, or to teaching in his or her medical field or specialty in an accredited university.

If the health care provider executing the screening certificate of merit meets the qualifications of subdivisions (1), (2), and (3) of this subsection, there shall be a presumption that the health care provider is qualified as an expert for the purpose of executing a screening certificate of merit. The screening certificate of merit shall state with particularity, and include: (A) The basis for the expert's familiarity with the applicable standard of care at issue; (B) the expert's qualifications; (C) the expert's opinion as to how the applicable standard of care was breached; (D) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death; and (E) a list of all medical records and other information reviewed by the expert executing the screening certificate of merit. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The health care provider signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection limits the application of Rule 15 of the Rules of Civil Procedure. No challenge to the notice of claim may be raised prior to receipt of the notice of claim and the executed screening certificate of merit.

(c) Notwithstanding any provision of this code, if a claimant or his or her counsel believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit. The statement shall be accompanied by the list of medical records and other information otherwise required to be provided pursuant to subsection (b) of this section.

(d) Except for medical professional liability actions against a nursing home, assisted living facility, their related entities or employees, or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees, if a claimant or his or her counsel has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the claimant shall comply with the provisions of subsection (b) of this section except that the claimant or his or

her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within 60 days of the date the health care provider receives the notice of claim. The screening certificate of merit shall be accompanied by a list of the medical records otherwise required to be provided pursuant to subsection (b) of this section.

(e) In medical professional liability actions against a nursing home, assisted living facility, their related entities or employees, or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees, if a claimant or his or her counsel has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the claimant shall comply with the provisions of subsection (b) of this section except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within 180 days of the date the health care provider receives the notice of claim.

(f) Any health care provider who receives a notice of claim pursuant to the provisions of this section may respond, in writing, to the claimant or his or her counsel within 30 days of receipt of the claim or within 30 days of receipt of the screening certificate of merit if the claimant is proceeding pursuant to the provisions of subsection (d) or (e) of this section. The response may state that the health care provider has a bona fide defense and the name of the health care provider's counsel, if any.

(g) Upon receipt of the notice of claim or of the screening certificate of merit, if the claimant is proceeding pursuant to the provisions of subsection (d) or (e) of this section, the health care provider is entitled to prelitigation mediation before a qualified mediator upon written demand to the claimant.

(h) If the health care provider demands mediation pursuant to the provisions of subsection (g) of this section, the mediation shall be concluded within 45 days of the date of the written demand. The mediation shall otherwise be conducted pursuant to Rule 25 of the Trial Court Rules, unless portions of the rule are clearly not applicable to a mediation conducted prior to the filing of a complaint or unless the Supreme Court of Appeals promulgates rules governing mediation prior to the filing of a complaint. If mediation is conducted, the claimant may depose the health care provider before mediation or take the testimony of the health care provider during the mediation.

(i)(1) Except for medical professional liability actions against a nursing home, assisted living facility, their related entities or employees, or a

distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees, and except as otherwise provided in this subsection, any statute of limitations applicable to a cause of action against a health care provider upon whom notice was served for alleged medical professional liability shall be tolled from the date of mail of a notice of claim to 30 days following receipt of a response to the notice of claim, 30 days from the date a response to the notice of claim would be due, or 30 days from the receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever last occurs.

(2) In medical professional liability actions against a nursing home, assisted living facility, their related entities or employees, or a distinct part of an acute care hospital providing intermediate care or skilled nursing care or its employees, except as otherwise provided in this subsection, any statute of limitations applicable to a cause of action against a health care provider upon whom notice was served for alleged medical professional liability shall be tolled 180 days from the date of mail of a notice of claim to 30 days following receipt of a response to the notice of claim, 30 days from the date a response to the notice of claim would be due, or 30 days from the receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever last occurs.

(3) If a claimant has sent a notice of claim relating to any injury or death to more than one health care provider, any one of whom has demanded mediation, then the statute of limitations shall be tolled with respect to, and only with respect to, those health care providers to whom the claimant sent a notice of claim to 30 days from the receipt of the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded.

(j) Notwithstanding any other provision of this code, a notice of claim, a health care provider's response to any notice claim, a screening certificate of merit, and the results of any mediation conducted pursuant to the provisions of this section are confidential and are not admissible as evidence in any court proceeding unless the court, upon hearing, determines that failure to disclose the contents would cause a miscarriage of justice.

W. Va. Code §55-7B-6. It is undisputed in this case that Plaintiff did not provide the United States with a compliant Notice of Claim, or with a Screening Certificate of Merit.

Plaintiff does not address his failure to comply with the MPLA in his response, but seems to suggest that his case involves "a well-established legal theory of liability which

5

does not require expert testimony supporting a breach of the applicable standard of care," which, under §55-7B-6(c), obviates the need for a Screening Certificate of Merit. (ECF No. 18 at 2) (stating "I think we should all agree that [no doctor] that feels he's not his best and not himself should never be doing any type of surgery."). Even in a case where (c) applies, however, the plaintiff is still required by the MPLA to "file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit. The statement shall be accompanied by the list of medical records and other information otherwise required to be provided pursuant to subsection (b) of this section." This Plaintiff did not do.

Having considered the information provided by Plaintiff, the undersigned concludes that the medical issues involved in this case are not so clear cut that a screening certificate is unnecessary. To the contrary, Plaintiff challenges the decision made by his treating surgeon to abort a procedure in the face of unexpected intraoperative findings. Matters of medical/surgical judgment typically fall beyond the common knowledge of lay persons, and this case is no exception. Indeed, cases that meet the exception to the general rule requiring a screening certificate are rare. *See Giambalvo v. United States,* No. 1:11CV14, 2012 WL 984277, at *4 (N.D.W. Va. Mar. 22, 2012) (rejecting plaintiff's argument that his medical negligence claim, alleging that a bandage wrapped too tightly around his foot caused swelling, pain, tissue death, necrosis, and a MRSA infection, was based upon a well-established theory of liability and required no certificate of merit); *Ellis v. United States,* No. 5:11-CV-00096, 2013 WL 4679933, at *7 (S.D.W. Va. Aug. 30, 2013) (holding that issues, like "what constitutes timely treatment, risk factors, symptoms, possible side-effects, and appropriate treatment options [in a dental claim] …. are not within the understanding of lay jurors by resort to common knowledge and experience.");

*Callahan v. Cho*, 437 F. Supp. 2d 557, 562 (E.D. Va. 2006) ("As a general rule, a plaintiff is not required to provide a medical screening certificate when the plaintiff's case will not require expert medical witnesses ... Yet, this exception is not easily invoked, as a plaintiff seeking to do so must overcome the general presumption in West Virginia medical malpractice law that "negligence or want of professional skill can be proved only by expert witnesses") (citing *McGraw v. St. Joseph's Hospital,* 200 W.Va. 114, 488 S.E.2d 389, 394 (1997)); *and Morris v. United States*, No. 3:12-CV-73, 2012 WL 6048936, at *5 (N.D.W. Va. Dec. 5, 2012) *aff'd,* 520 F. App'x 205 (4th Cir. 2013) (rejecting plaintiff's claim that the alleged delay in treating his fracture fell within the exception of 55-7B-6(c) and noting "[a] court shall require expert testimony except where the 'lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience.'") (citing *Banfi v. Am. Hosp. for Rehab.,* 529 S.E.2d 600, 605 (W.Va. 2000)).

Thus, the Court finds that Plaintiff should have submitted to the United States a Notice of Claim and Screening Certificate of Merit, as required by West Virginia law, before he filed the complaint herein. Nevertheless, the Court notes that "the West Virginia Supreme Court and other courts within this district have emphasized that the MPLA is intended to prevent frivolous medical malpractice lawsuits, and that motions regarding compliance with the MPLA should be reviewed in light of that statutory purpose." *Mitchell v. United States*, No. 5:18-CV-00074, 2018 WL 4204345, at *4 (S.D.W. Va. Sept. 4, 2018). Given Plaintiff's *pro se* status; his apparent belief that his case does not require a Screening Certificate of Merit, because his surgeon was "not himself" and simply failed to perform the surgery; and the harshness of dismissal as a remedy for Plaintiff's failures,

the undersigned finds that Plaintiff should be given an opportunity to rectify his errors. *See Sumpter v. United States*, No. 5:16-CV-08951, 2018 WL 2170505, at *6 (S.D.W. Va. May 10, 2018) (holding that "dismissal would be too harsh of a remedy" where a plaintiff failed to comply with the pre-filing requirements of the MPLA, but was acting *pro se* and did not present a patently frivolous claim).

Accordingly, the Court finds that Plaintiff should have a reasonable opportunity to submit a Notice of Claim and Screening Certificate of Merit, which comply with the MPLA. Courts have found thirty days to be a reasonable amount of time to secure a screening certificate, prepare a notice of claim, and submit them to the health care provider—in this case, the United States. *Pledger v. United States*, No. 2:16-CV-83, 2018 WL 4627023, at *9 (N.D.W. Va. Sept. 27, 2018) ("[C]ourts have found that 30 days is enough time to cure the failing of the certificate requirement."). As such, Plaintiff is hereby **ORDERED** to file a Notice of Claim and Screening Certificate of Merit, both of which comply with the MPLA, within **thirty (30) days** of the date of this Order. Plaintiff is notified that his failure to file these documents, as ordered, will likely result in a recommendation at that his lawsuit be dismissed for the failure to comply with the MPLA.

The Clerk is instructed to provide a copy of this Order to Plaintiff and counsel of record.

**ENTERED:** October 2, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge

8