IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RODNEY CARTER,

        **Plaintiff,**

v.                              **Case No.: 3:19-cv-00077**

UNITED STATES,

        **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Plaintiff's *pro se* Complaint, (ECF No. 2), Defendant's Motion to Dismiss, (ECF No. 15), and Defendant's Renewed Motion to Dismiss. (ECF No. 21). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that Defendant's Motions to Dismiss, (ECF Nos. 15, 21), be **GRANTED**; and that the Complaint, (ECF No. 2), be **DISMISSED, without prejudice**, and removed from the docket of the court.

## I.    Relevant Facts

Plaintiff, Rodney Carter ("Carter), filed his complaint on January 30, 2019, alleging that he received deficient medical care at a federal medical facility. (ECF No. 2 at 4). Specifically, Carter asserts that on October 17, 2016, he presented to the Veterans Affairs Medical Center ("VAMC") in Huntington, West Virginia for a hernia repair surgery

to be performed by Dr. Dennis Meurer. (ECF No. 2 at 4). When the procedure was over, Carter believed that his hernia had been repaired. However, he continued to notice bulging at the hernia site. When Carter returned to the VAMC approximately a week later to have his staples removed, he told Dr. Meurer's assistant that the hernia was still bulging. He was then informed that the planned hernia repair had not been completed on October 17, 2016, because, instead of a hernia, Dr. Meurer found a large hydrocele in Carter's lower pelvis, which apparently had to be addressed by a different surgeon. (*Id.*). According to Carter, he later learned that he was suffering from both a hernia and a hydrocele, but they were 11 inches apart and "one had nothing to do with the other." (*Id.*).

Carter returned to the VAMC at some point between December 2016 and February 2017, and although he did not have an appointment with Dr. Meurer, Dr. Meurer asked to speak with Carter upon seeing him in the hallway. Dr. Meurer told Carter he was "sorry" he had not repaired the hernia. (*Id.*). Dr. Meurer further stated, according to Carter, that he was not himself on the day of the surgery or otherwise "he would have caught the hydrocele." (*Id.*). On March 6, 2017, Dr. Monning performed surgery on the hydrocele. (ECF No. 2 at 4).

Carter believes that "[i]f Dr. Meurer had done his job, he would have removed the hernia and Dr. Monning would have done the hydrocele surgery and [Carter] could go on with normal day to day life." (*Id.*). Carter asserts that due to Dr. Meurer's failure to complete the October 2016 surgery, Carter will be forced to endure a third operation to repair his hernia and suffer "weeks of pain." (*Id.*). Carter seeks $500,000 in damages due to the "unnecessary pain and anguish" he suffered caused by "a surgery that was not appropriately done." (*Id.* at 5). He also requests a trial by jury. (ECF No. 2-1 at 1).

On April 12, 2019, Defendant submitted an Answer to the Complaint, accompanied by a Motion to Strike Plaintiff's Demand for a Jury Trial, and a supporting Memorandum. (ECF Nos. 12, 13, 14). In the Answer, Defendant raises a number of defenses, including the defense that Carter's claim is barred because he failed to comply with the pre-litigation requirements of the West Virginia Medical Professional Liability Act, W. Va. Code Ann. § 55-7B-6 ("MPLA"). (ECF No. 12 at 1-5). Defendant admits that Carter was scheduled to undergo a hernia repair surgery on October 17, 2016 at the VAMC, and that he returned to the VAMC for a follow-up surgery to repair a hydrocele on March 6, 2017. (*Id.* at 1). Defendant denies, however, that employees of the VAMC provided deficient care or were negligent in any manner. (*Id.*). In the Motion to Strike, Defendant asserts that Carter's request for a jury trial should be stricken because his claim is raised under the Federal Tort Claims Act, 28 U.S.C. § 2671, ("FTCA"), and jury trials in FTCA actions against the United States are barred by 28 U.S.C. § 2402. (ECF No. 13 at 1).

On April 19, 2019, Defendant submitted a Motion to Dismiss Complaint and an accompanying Memorandum of Law. (ECF Nos. 15, 16). Defendant asserts that the complaint should be dismissed as Carter failed to comply with the pre-filing mandates of the MPLA, which require plaintiffs to present a Notice of Claim and Screening Certificate of Merit before filing suit. (ECF No. 16 at 1). Defendant further contends that Carter's claim does not qualify for an exception to the general pre-filing requirements, because the medical issues presented and the standards of care implicated involve knowledge beyond that which is normally possessed by laymen. (*Id.* at 6). Defendant accordingly asks that Carter's lawsuit be dismissed. (*Id.* at 7).

In support of the Motion to Dismiss, Defendant attached an affidavit prepared by Rhonda Freeman, who is employed as a Risk Manager and EPRP Coordinator at the

3

VAMC. (ECF No. 15 at 5). Ms. Freeman states that on February 22, 2018, she received an SF 95 Claim for Damage, Injury, or Death form submitted by Carter, a copy of which she filed with her affidavit. (ECF No. 15 at 5, 8). Ms. Freeman indicates that she has received no other documents from Carter related to the claim presented in his complaint. (*Id.* at 5). In the form, Carter requests $75,000 in damages related to an incident that occurred at the VAMC on October 17, 2016. (*Id.* at 8-10). Carter provides further details regarding the incident, explaining that, upon returning to the VAMC to have staples removed, he was informed that the October 17, 2016 attempt to remove the hernia was terminated due to the discovery of a larger hydrocele. (*Id.* at 10). Carter asserted that because the hydrocele was located 11 inches away from the hernia, and because "one had nothing to do with the other," the hernia should have been removed during the October 17, 2016 procedure. Carter further stated in the form that Dr. Meurer had later spoken to him regarding the surgery and apologized for not removing the hernia, telling Carter that he "wasn't himself" on the day of the surgery, or otherwise he would have "caught it." (*Id.*).

On May 21, 2019, Carter submitted a Response to Defendant's motion, contending that his Complaint should not be dismissed. (ECF No. 18 at 1). In support, Carter refers to Dr. Meurer's alleged statement that he wasn't himself on the day of surgery. Carter argues that "we should all agree that no [doctor] that feels he's not his best and not himself should … be doing any type of surgery." (*Id.* at 1-2). Carter concedes that his initial request for $500,000 in damages was "a little extreme," and asks that he instead be granted $75,000 in damages, the amount requested in the SF 95 form. (*Id.* at 2).

On June 3, 2019, Defendant filed a Reply to Carter's response in which Defendant argues that because Carter failed to address the basis for the motion to dismiss—which is Carter's failure to comply with the statutory requirements of the MPLA—the motion to

dismiss should be granted. (ECF No. 19 at 1). On October 2, 2019, the undersigned entered a Memorandum Opinion and Order, granting Defendant's Motion to Strike Carter's request for a jury trial. (ECF No. 20 at 1). The undersigned went on to consider Defendant's Motion to Dismiss and found that Carter was required to comply with the requisite pre-filing mandates of the MPLA, but had failed to do so. (*Id.* at 5). The undersigned also concluded that, to the extent Carter was suggesting that he was not required to submit a Screening Certificate of Merit because his case qualified for the exception in § 55-7B-6(c), he still had not complied with the MPLA. The MPLA requires a plaintiff, seeking to file a claim under the exception, to submit a statement to the defendant "specifically setting forth the basis of the alleged liability." (*Id.* at 6). The undersigned advised, however, that Carter's claim did not appear to fall within the exception, because the medical issues raised in his complaint were not "based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." § *See* 55-7B-6(c) (ECF No. 20 at 6).

Although Carter failed to comply with the requirements of the MPLA, the undersigned concluded that, due to Carter's *pro se* status, his mistaken belief that he was not required to file a Screening Certificate of Merit, and the underlying purpose of the MPLA, he should be given a "reasonable opportunity to rectify his errors." (*Id.* at 7-8). Accordingly, Carter was given thirty days from the date of the Order to file a Notice of Claim and a Screening Certificate of Merit that complied with the requirements of the MPLA. Carter was further notified that "his failure to file these documents, as ordered, will likely result in a recommendation that his lawsuit be dismissed for the failure to comply with the MPLA." (*Id.* at 8).

On November 7, 2019, Defendant submitted a Renewed Motion to Dismiss. (ECF No. 21). Defendant contends that because Carter had not complied with the undersigned's Order by November 1, 2019, as required, the complaint should be dismissed for a failure to prosecute.[1] (*Id.* at 2). Since the filing of the Order, Carter has not communicated with the Court or submitted any additional filings.

## II.    <u>Standard of Review</u>

Carter has filed his complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). A court is not required to rewrite pleadings to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

The United States seeks dismissal under Fed. R. Civ. P. 12(b)(1) and (12)(b)(6). A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond,*

---

[1] Given that Carter's complaint must be dismissed for his failure to comply with the MPLA, the Court need not consider Defendant's argument regarding failure to prosecute.

*Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). Second, the movant may, as the United States does in this case, contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, a court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that a court has subject matter jurisdiction rests with the plaintiff as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, a court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion under Rule 12(b)(6) tests the sufficiency of the complaint to state a claim. A complaint fails to state a claim when, accepting the plaintiff's well-pled allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires allegations that "raise a right to relief above the speculative level." *Id.* at 555. Consequently, the complaint must include "facts sufficient to state all the elements of [the plaintiff's] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). In this case,

## III.   **Discussion**

As previously noted, the United States is correct that negligence claims asserted against it under the FTCA are governed by the substantive law of "the place where the act or omission occurred." 28 U.S.C. § 1346(b). Accordingly, whether a FTCA claim can be maintained depends "upon whether a private individual under like circumstances would be liable under state law." *United States v. Muniz,* 374 U.S. 150, 153, (1963); *Unus v.*

7

*Kane,* 565 F.3d 103, 117 (4th Cir. 2009) ("The FTCA does not itself provide for a substantive cause of action. Rather, in assessing FTCA claims, we apply the substantive law of the state where the alleged tort took place ..."). In the instant action, the alleged negligence occurred at the VAMC in Huntington, West Virginia. Consequently, West Virginia law governs Carter's complaint. *See Martin v. United States*, No. CIV.A. 1:10-1399, 2012 WL 1111326, at *2 (S.D.W. Va. Mar. 30, 2012).

West Virginia's MPLA sets out the prerequisites for filing a medical negligence claim, stating in relevant part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

> (b) At least 30 days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. For the purposes of this section, where the medical professional liability claim against a health care facility is premised upon the act or failure to act of agents, servants, employees, or officers of the health care facility, such agents, servants, employees, or officers shall be identified by area of professional practice or role in the health care at issue. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider who:

> (1) Is qualified as an expert under the West Virginia rules of evidence;

> (2) Meets the requirements of § 55-7B-7(a)(5) and § 55-7B-7(a)(6) of this code; and

> (3) Devoted, at the time of medical injury, 60 percent of his or her professional time annually to the active clinical practice in his or her medical field or specialty, or to teaching in his or her medical field or specialty in an accredited university.

> If the health care provider executing the screening certificate of merit meets the qualifications of subdivisions (1), (2), and (3) of this subsection, there

shall be a presumption that the health care provider is qualified as an expert for the purpose of executing a screening certificate of merit. The screening certificate of merit shall state with particularity, and include: (A) The basis for the expert's familiarity with the applicable standard of care at issue; (B) the expert's qualifications; (C) the expert's opinion as to how the applicable standard of care was breached; (D) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death; and (E) a list of all medical records and other information reviewed by the expert executing the screening certificate of merit. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The health care provider signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection limits the application of Rule 15 of the Rules of Civil Procedure. No challenge to the notice of claim may be raised prior to receipt of the notice of claim and the executed screening certificate of merit.

W. Va. Code §55-7B-6. There is an exception to the Screening Certificate of Merit requirement in cases where the plaintiff believes that no certificate of merit is necessary "because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." *Id.* § 55-7B-6(c). In that circumstance, the plaintiff must file a statement "specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit." *Id.* The pre-suit requirements of the MPLA are mandatory and jurisdictional; therefore, a failure to adhere to the MPLA's statutory requirements provides grounds for a dismissal of the complaint. *See State ex rel. PrimeCare Med. of W. Virginia, Inc. v. Faircloth,* No. 18-1071, 2019 WL 6108577, at \*4 (W. Va. Nov. 12, 2019); *Stanley v. United States,* 321 F. Supp. 2d 805, 807 (N.D.W. Va. 2004).

The record is clear that Carter failed to provide the United States with a compliant Notice of Claim and Screening Certificate of Merit prior to filing the instant lawsuit. Carter suggests that his case falls within the exception set forth in § 55-7B-6(c); however, courts in this circuit have recognized that exceptions to the pre-filing requirements are rare. *See*

*Giambalvo v. United States,* No. 1:11CV14, 2012 WL 984277, at *4 (N.D.W. Va. Mar. 22, 2012) (rejecting plaintiff's argument that his medical negligence claim, alleging that a bandage wrapped too tightly around his foot caused swelling, pain, tissue death, necrosis, and a MRSA infection, was based upon a well-established theory of liability and required no certificate of merit); *Ellis v. United States,* No. 5:11-CV-00096, 2013 WL 4679933, at *7 (S.D.W. Va. Aug. 30, 2013) (holding that issues, like "what constitutes timely treatment, risk factors, symptoms, possible side-effects, and appropriate treatment options [in a dental claim] .... are not within the understanding of lay jurors by resort to common knowledge and experience."); *Callahan v. Cho,* 437 F. Supp. 2d 557, 562 (E.D. Va. 2006) ("As a general rule, a plaintiff is not required to provide a medical screening certificate when the plaintiff's case will not require expert medical witnesses ... Yet, this exception is not easily invoked, as a plaintiff seeking to do so must overcome the general presumption in West Virginia medical malpractice law that "negligence or want of professional skill can be proved only by expert witnesses") (citing *McGraw v. St. Joseph's Hospital,* 200 W.Va. 114, 488 S.E.2d 389, 394 (1997)); *and Morris v. United States,* No. 3:12-CV-73, 2012 WL 6048936, at *5 (N.D.W. Va. Dec. 5, 2012) *aff'd,* 520 F. App'x 205 (4th Cir. 2013) (rejecting plaintiff's claim that the alleged delay in treating his fracture fell within the exception of 55-7B-6(c) and noting "[a] court shall require expert testimony except where the 'lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience.'") (citing *Banfi v. Am. Hosp. for Rehab.,* 529 S.E.2d 600, 605 (W. Va. 2000)). Furthermore, even assuming that Carter's claim fell within the exception, he still has not complied with the MPLA, because he has not filed "a statement specifically setting forth the basis of alleged

liability … *in lieu of a screening certificate.*" *S.L. by & through D.L. v. City Hosp., Inc.*, 377 F. Supp. 3d 626, 631 (N.D.W. Va. 2019) (quoting W. Va. Code § 55-7B-6(c)).

Carter claims that, despite Dr. Meurer's intraoperative discovery of a large hydrocele, he should have continued with the October 17, 2016 hernia repair as initially planned. (ECF No. 2 at 4). The propriety of Dr. Meurer's decision to terminate the procedure in the face of a new and unexpected finding is a matter of medical judgment that is not amenable to adjudication by lay jurors using only common knowledge and experience, as is required for the exception to apply. Indeed, the standard of care applicable to Dr. Meurer's surgical decision, as well as the risks, benefits, and impact of that decision on Carter, are matters that require expert testimony. Given that Carter's claim does not rely on "a well-established legal theory of liability which does not require expert testimony," he should have provided a Notice of Claim and Screening Certificate of Merit to the United States before instituting this action.

Notwithstanding the Court's prior order giving Carter additional time to file a Notice and Screening Certificate, he has failed to do so. (ECF No. 20 at 6). Moreover, Carter has not provided this Court with any information regarding his efforts to comply with the MPLA, nor has he asked for a continuance of the court-ordered deadline, which has now long since passed. The failure to comply with the MPLA's pre-filing instructions is fatal to his complaint. *See Mitchell v. United States*, No. 5:18-CV-00074, 2018 WL 4204345, at *3-4 (S.D.W. Va. Sept. 4, 2018). Accordingly, the undersigned **FINDS** that the complaint should be dismissed, without prejudice, for failure to comply with statutory requirements imposed by the MPLA. *See Jones v. United States*, No. 1:11CV115, 2013 WL 955202, at *5 (N.D.W. Va. Mar. 12, 2013) *aff'd,* 531 F. App'x 306 (4th Cir. 2013) (holding that the certificate of merit provisions of W. Va. Code § 55–7B–6 are not intended to

restrict or deny a citizen's access to the courts; therefore, dismissal for the failure to supply a certificate of merit should be without prejudice).

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss Complaint, (ECF No. 15), and Renewed Motion to Dismiss Complaint, (ECF No. 21); **DISMISS** the complaint, **without prejudice**, (ECF No. 2); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, and counsel of record.

**FILED:** December 13, 2019

Cheryl A. Eifert
United States Magistrate Judge